UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -against- | 21-cr-210 (JSR) |
| STEVE RAMOS DE LA ROSA, | MEMORANDUM & ORDER |
| Defendant. | |

JED S. RAKOFF, U.S.D.J.

Defendant Jonathan Silvano Ramos-de la Rosa moves to dismiss the March 29, 2021 Information charging him with illegally reentering the United States after having been convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Ramos-de la Rosa challenges the Information on the ground that he was invalidly deported from the United States in 2010. In the alternative, Ramos-de la Rosa asks that the trial scheduled for October 4, 2021 be postponed until collateral proceedings concerning the validity of his 2010 deportation are resolved in the Second Circuit.

Upon consideration, the Court denies both motions. Ramos-de la Rosa has not carried his burden to challenge his previous deportation, and with more than four months before his trial is scheduled to begin, his request for an adjournment is premature at this time.

1

BACKGROUND

Ramos-de la Rosa is a native and citizen of the Dominican Republic. Gov't Ex. C (April 19, 2010 Deportation Hrg. Tr.), ECF No. 8-3, at 43:1-45:24. He was admitted to the United States as a lawful permanent resident in April 1998. Id. at 44:3-5. In August 2005, he pleaded guilty to one count of distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(C), and one count of use and possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). ECF No. 13 at 1, United States v. Ramos, 05-cr-646 (JSR). This Court sentenced Ramos-de la Rosa to 72 months' imprisonment, later reduced to 69 months' imprisonment. See ECF No. 17, United States v. Ramos, 05-cr-646 (JSR).

At the conclusion of his sentence on March 9, 2010, Ramos de-la Rosa was transferred to the custody of Immigration & Customs Enforcement ("ICE"), which charged him with removability from the United States. Def. Mot. 2; Gov't Opp'n 3; Gov't Ex. A ("NTA"), ECF No. 8-1, at 1. The Notice to Appear ("NTA") provided three bases for Ramos-de la Rosa's removal: (1) commission of an aggravated felony related to the illicit trafficking of a controlled substance, (2) commission of an aggravated felony involving a crime of violence, and (3) commission of a controlled substance offense. NTA at 2-4. The NTA ordered Ramos-de la Rosa to appear before an immigration judge at a date and time to be set.

Id. at 2. Ramos-de la Rosa acknowledged receipt of the NTA by signing the certificate of service. See id. at 3. The certificate indicates he was served in person and was provided with a list of organizations and attorneys providing free legal services. See id. On April 5, 2010, Ramos-de la Rosa was personally served with a Notice of Hearing informing him that his removal hearing would occur on April 19, 2010, at 8:00 a.m. See Gov't Ex. B, ECF No. 8-2, at 2.

Ramos-de la Rosa appeared before Immigration Judge Jimmie L. Benton at the appointed date and time. See Deportation Hrg. Tr. at 43:1-7. The Immigration Judge ("IJ") began the hearing by providing all the respondents, including Ramos-de la Rosa, an overview of their rights. See id. at 1:8-2:22. During the brief portion of the proceeding that concerned Ramos-de la Rosa's case, the IJ asked him a series of questions. Ramos-de la Rosa confirmed that he understood English. Id. at 43:4-7. He said that he did not want time to obtain counsel. Id. at 43:8-11. Ramos-de la Rosa said that he wished to be deported to the Dominican Republic, where he was born. Id. at 43:14:44-71. He confirmed that he had become a U.S. permanent resident in April 1998 and had been convicted of drug and firearms charges. Id. at 44:4-21. Asked his age, he responded that he was 35 years old. Id. at 44:25-45:1. He confirmed that neither his father nor his mother is a U.S. citizen. Id. at 45:3-9. The IJ then stated that Ramos-de la Rosa would be ordered

deported to the Dominican Republic and asked Ramos-de la Rosa: "Do you wish to appeal my decision to a higher Court?" Id. at 45:10-12. Ramos-de la Rosa responded, "No, sir." Id. at 45:13-14. Lastly, the IJ asked if Ramos-de la Rosa accepted deportation. Id. at 43:15-16. He responded, "Yes, sir." Id. at 43:17-18. The IJ concluded: "Sir, because you have been convicted of an aggravated felony, the law says you can never return to this country. If you do return, it will be illegally and you could go to jail for 20 years and be fined $250,000. Thank you. Have a seat." Id. at 45:19-22.

After Ramos-de la Rosa's removal, he unlawfully returned to the United States. On March 29, 2021, he was charged by information with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2). ECF No. 5.

Since Ramos-de la Rosa's arrest, he has initiated two collateral attacks on his deportation. First, on November 23, 2020, Ramos de la Rosa filed a motion to reopen his immigration proceeding with the immigration authorities. See id. at Gov't Ex. E, ECF No. 8-5. The Government responded on November 25, 2020. Id. That motion remains pending.

Second, on December 1, 2020, he filed in the Southern District of New York a petition for a writ of habeas corpus. See Ramos-de la Rosa v. Dep't of Homeland Sec., No. 20-cv-10038.

On May 18, 2021, Judge Schofield adopted Magistrate Judge Sarah L. Cave's Report and Recommendations denying the petition for the writ of habeas corpus. ECF No. 17 and 18, Ramos-de la Rosa v. Dep't of Homeland Sec., No. 20-cv-10038. Ramos-de la Rosa filed a notice of appeal of Judge Schofield's decision on June 8, 2021. ECF No. 21, Ramos-de la Rosa, No. 20-cv-10036. Appellate proceedings are pending in the Second Circuit. Ramos-de la Rosa v. Dep't of Homeland Sec., No. 21-1471 (2d Cir. filed June 14, 2021).

DISCUSSION

I. Motion to Dismiss the Indictment

Ramos-de la Rosa now moves to dismiss the Information on the ground that his previous deportation was invalid. Def. Mot. 3-6.

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001). However, a noncitizen charged with illegal reentry may collaterally attack the validity of the underlying deportation order if (1) the defendant has exhausted administrative remedies, (2) the deportation proceedings "deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Each of the statute's three requirements must be satisfied. United States v. Palomar-Santiago, 141 S. Ct. 1615, 1620-21 (2021). The

5

defendant must also demonstrate that, "absent the procedural errors, he would not have been removed." United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002).

A. Exhaustion of Administrative Remedies

The first § 1326(d) factor is whether the defendant exhausted his administrative remedies. Although Ramos-de la Rosa did not exhaust his administrative remedies by timely appealing the deportation order to the Board of Immigration Appeals, see United States v. Gill, 748 F.3d 491, 487 (2d Cir. 2014), his waiver of his right to appeal was likely not knowing and intelligent.

A defendant's failure to exhaust administrative remedies bars collateral review of a deportation order only if the defendant's waiver was knowing and intelligent. United States v. Calderon, 391 F.3d 370, 374-75 (2d Cir. 2004). Further, 8 CFR § 1003.25 requires an IJ to "determine that the alien's waiver is voluntary, knowing, and intelligent." 8 CFR § 1003.25. A waiver satisfies this standard when (1) a defendant is told of his right to appeal, states that he understands that right, and wishes to waive it, and (2) the IJ expressly finds that the waiver is voluntary, knowing, and intelligent. United States v. Taveras, 504 F. Supp. 3d 272, 287-88 (S.D.N.Y.); United States v. Nunez, 375 F. Supp. 3d 232, 240-41 (E.D.N.Y. 2018). In contrast, a waiver is not voluntary, knowing, and intelligent when the IJ fails to explain to the

defendant the consequences of the waiver or, where a defendant has a clearly established right to be informed about possible routes for challenging deportation, when the IJ fails to state the grounds for appeal the defendant might have. United States v. Benitez-Dominguez, 440 F. Supp. 3d 202, 207 (E.D.N.Y. 2020) (Garaufis, J.); United States v. Copeland, 376 F.3d 61, 71 (2d. Cir 2004); and Nunez, 375 F. Supp. 3d at 240-41.

The Government contends that the IJ advised Ramos-de la Rosa of his right to counsel and provided information about low- or no-cost representation. The Government adds that before the IJ called Ramos-de la Rosa's case, the IJ adjourned proceedings because some respondents wanted counsel present. Despite this, Ramos-de la Rosa nevertheless expressly waived his right to counsel, admitted to the convictions listed in the Notice to Appear, expressed his wish to be deported, and waived his right to appeal. See Deportation Hrg. Tr. at 43:8-23, 45:11-18.

However, when Ramos-de la Rosa appeared pro se before the IJ, the IJ neither explained the consequences of Ramos-de la Rosa's waiver, nor made a finding on the record that Ramos-de la Rosa's waiver was voluntary, knowing, and intelligent. For these reasons, the Court cannot conclude that Ramos-de la Rosa's waiver was legally sufficient. Therefore, his failure to exhaust his administrative remedies does not bar collateral review of the deportation order.

B. <u>Opportunity for Judicial Review</u>

The second § 1326(d) factor is whether the defendant was improperly deprived of the opportunity for judicial review. Ramos-de la Rosa satisfies this factor as well.

"Where waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review." <u>Copeland</u>, 376 F.3d at 68 n.6. In addition, the fact that a warrant of removal/deportation was issued against Ramos-de la Rosa only two days after the immigration court entered its order of deportation, Def. Mot. 5-6, effectively denied Ramos-de la Rosa the opportunity to seek judicial review through a habeas petition. See <u>United States v. Sosa</u>, 387 F.3d 131, 137 (2d Cir. 2004) (holding that no meaningful opportunity for judicial review exists when the period between the entry of a deportation order and the defendant's deportation was "too brief to afford a realistic possibility of filing a habeas petition").

Nevertheless, the Government repeats its contention that Ramos-de la Rosa's waiver of his right to appeal was knowing and voluntary. Gov't Opp'n 10. However, the Government's reliance on <u>Benitez-Dominguez</u> actually undercuts the Government's position. In <u>Benitez-Dominguez</u>, the court found that there was no knowing and intelligent waiver of the right to appeal where a defendant was asked only "Do you wish to appeal my decision to a higher court?" and was not informed that, by waiving his right to appeal, he would

8

be consenting to final judgment and would be unable later to change his mind. 440 F. Supp. 3d at 207.

This is exactly what happened to Ramos-de la Rosa. At the beginning of the deportation hearing, the IJ stated that "[o]n the reverse side of the legal aid list you received, there is a written explanation of your appeal rights. If you disagree with any decision that I make in your case, you have the right to appeal my decisions to a higher Court. You will receive further instructions on your right to appeal if necessary." Deportation Hrg. Tr. 2:10-14. However, the record does not include any such "written explanation," nor is there evidence that Ramos-de la Rosa received any "further instructions" before he waived his right to appeal.

C. Fundamental Unfairness

The final § 1326(d) factor is whether the entry of the removal order was fundamentally unfair and resulted in prejudice. United States v. Daley, 702 F.3d 96 (2d Cir. 2012); United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002). The test for prejudice is similar to that for ineffective assistance of counsel claims. Copeland, 376 F.3d at 73. Accordingly, Ramos-de la Rosa must demonstrate that any fundamental unfairness would have changed the outcome of his deportation proceeding.

While the IJ may have erred in the IJ's approach to Ramos-de la Rosa's case, there was no fundamental unfairness that prejudiced

9

the defendant. Ramos-de la Rosa was subject to mandatory deportation because of the nature of his two convictions. Both trafficking in crack cocaine and use and possession of a firearm during and in furtherance of a drug trafficking crime are aggravated felonies as defined in 8 U.S.C. § 1101(43)(B) and (C). This definition brings Ramos-de la Rosa within the scope of 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that a noncitizen "is deportable" if convicted of an aggravated felony. The narcotics charge also brings him within the scope of 8 U.S.C. § 1227(a)(2)(B)(i), which provides that a noncitizen "is deportable" if convicted of a controlled substance charge other than the possession of a small amount of marijuana for personal use.

Ramos-de la Rosa's arguments to the contrary are unavailing. He suggests that had he been represented by counsel or properly advised of his rights, the arguments he is raising in his pending habeas appeal could have been presented to the immigration court and/or the Board of Immigration Appeals. Tellingly, the defense acknowledges that "not . . . all of Ramos's current arguments are equally meritorious." Def. Mot. 6. Indeed, had he presented them at the time of his removal, the outcome would almost certainly have remained the same.

First, Ramos-de la Rosa argues that he was not convicted of a controlled substance violation because, he alleges, "crack" is not expressly listed as a controlled substance. Gov't Ex. E, at 4.

Ramos-de la Rosa pleaded guilty to conspiracy to distribute crack cocaine, the common name for a form of cocaine base. The indictment to which he pleaded guilty specified that he had distributed and possessed with the intent to distribute "mixtures and substances containing a detectable amount of cocaine base in a form commonly known as 'crack.'" United States v. Ramos, ECF No. 11, at 1. Cocaine appears on Schedule II, 21 CFR § 1308.12(b)(4), and 21 U.S.C. § 841(b) includes provisions that set forth penalties for offenses involving cocaine base. Crack is patently a controlled substance.

Second, Ramos-de la Rosa contends that typographical errors in the NTA, such as stating the crime of conviction as 18 U.S.C. § 924(c)(1)(A)(I) instead of § 924(c)(1)(A)(i), invalidated it. He advances no legal authority for this proposition.

Third, Ramos-de la Rosa points to recent decisions of the Supreme Court that, he argues, render his firearm conviction no longer an aggravated felony. But Sessions v. Dimaya, 138 S. Ct. 1204 (2018), which invalidated 18 U.S.C. § 16(b) for vagueness, was decided eight years after Ramos-de la Rosa's removal, and he has offered no basis to justify overturning a removal order that was valid when it was issued. Moreover, United States v. Davis, 139 S. Ct. 2319 (2019), did not invalidate the "drug trafficking crime" predicate for a conviction under § 924(c), and therefore,

"Davis has no effect" on Ramos-de la Rosa's case. Williams v. United States, 2020 WL 6683075, at *2 (S.D.N.Y. Nov. 12, 2020).

Lastly, Ramos-de la Rosa claims that he faces risk from his former co-conspirators and alleged persecutors. He did not raise these concerns in his initial criminal or removal proceedings. Even had he done so, his felony convictions would still have required his removal, because Ramos-de la Rosa has failed to demonstrate that he is eligible for any form of relief from mandatory deportation. While Ramos-de la Rosa's motion to reopen remains pending, Magistrate Judge Cave, whose Report and Recommendation Judge Schofield adopted, echoes this analysis, concluding that Ramos-de la Rosa has failed to state a viable challenge to his deportation. See Ramos-de la Rosa v. Dep't of Homeland Sec., No. 20-cv-10038 , ECF No. 17, at 16-19.

Because the three requirements of § 1326(d) are conjunctive, Ramos-de la Rosa has not carried his burden under the statute to demonstrate that his previous deportation was invalid. The motion to dismiss the Information is therefore denied.

## II. Motion to Adjourn Trial

In the alternative, Ramos-de la Rosa asks the Court to adjourn the trial scheduled for October 4, 2021. Ramos-de la Rosa argues that because he is currently litigating with ICE the validity of his prior deportation, the U.S. Attorney is "unable to enter into

plea negotiations with him." Def. Mot. 6. He also contends that were he ultimately to proceed to trial, the outcome of these collateral proceedings "would likely dictate his defense strategy." Id. at 7. As noted above, the Immigration Court denied Ramos-de la Rosa's motion to reopen his deportation proceedings. His appeal of the denial of his habeas petition is pending at the Second Circuit.

"The disposition of a request for continuance rests in the discretion of the trial judge and the exercise of that discretion will not be disturbed unless a clear abuse is shown." United States v. Bentvena, 319 F.2d 916, 934-35 (2d Cir. 1963), cert. denied, 375 U.S. 940 (1963). The Court agrees with the Government that although Ramos-de la Rosa's habeas appeal shares common facts with this criminal case, the legal questions differ. Gov't Opp'n 11. Ramos-de la Rosa is therefore equipped to prepare for trial while the Second Circuit weighs his appeal. Id. Further, Ramos-de la Rosa's request for an adjournment is at least premature, coming more than four months before the scheduled start of trial. Id.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Information is DENIED. Although the motion to adjourn trial is DENIED at this time, it may be renewed as the trial date approaches if there are further relevant developments regarding defendant's pending habeas appeal.

SO ORDERED.

Dated: New York, NY
_____7/1_____, 2021

_____
JED S. RAKOFF, U.S.D.J.